**In the Matter of the WELFARE OF L.J.C., Child.**

**No. C6–84–2120.**

Court of Appeals of Minnesota.

May 7, 1985.

result of a Juvenile Court adjudication that declared him truant and a runaway. He also alleges that the trial court's findings were inadequate. We affirm in part and reverse in part.

## FACTS

L.J.C. was cited for truancy under Minn. Stat. § 260.015, subd. 19 (1984), and for being a runaway under Minn.Stat. § 260.-015, subd. 20 (1984). He appeared with his court-appointed counsel and his father, and admitted both citations. Immediately thereafter, the court held a disposition hearing.

The court ordered 90 days probation for L.J.C. and placement in the Chisholm House Work Program for 21 days subject to good time. It further ordered that if L.J.C. could not be placed at Chisholm House Work Program immediately, he should be held in detention at the Arrowhead Juvenile Center until he could be placed.

## ISSUES

1. Can a status offender be held in a secure facility such as the Arrowhead Juvenile Center while waiting for post-adjudication placement?

2. Can a status offender be placed in the Chisholm House Work Program?

3. Are the findings of the trial court inadequate?

Heather L. Sweetland, Duluth, for appellant.

Gary Bjorklund, Asst. Co. Atty., Duluth, for respondent.

Considered and decided by POPOVICH, C.J., and LANSING and HUSPENI, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

L.J.C. appeals from his detention in Arrowhead Juvenile Center and his placement in the Chisholm House Work Program as a

## ANALYSIS

L.J.C. has completed his dispositional sentence at the Chisholm House Work Program and has been discharged from probation and the jurisdiction of the juvenile court. He requests that this court review these dispositions even though they have been completed, because such brief dispositions evade review. We agree that this controversy falls within that category of controversies which are "capable of repetition but evading review." *See State ex rel. L.E.A. v. Hammergren*, 294 N.W.2d 705, 706 (Minn.1980) (quoting *Nebraska Press Association v. Stuart*, 427 U.S. 539,

546, 96 S.Ct. 2791, 2797, 49 L.Ed.2d 683 (1976). We take jurisdiction and will consider the dispositions made in this case notwithstanding the mootness as to L.J.C.

## I.

The court ordered L.J.C. held in detention at the Arrowhead Juvenile Center until he could be placed at the Chisholm House Work Program.

Minn.Stat. § 260.194, subd. 1 (1984), lists the disposition alternatives which are permitted when a court finds that a child is habitually truant or a runaway. The list is long and inclusive. It does not include a secure facility. *See also* Minn.Stat. § 260.-173, subd. 3(a), (b).

■ The Arrowhead Juvenile Center is a secure juvenile detention facility. The state acknowledges that there is no provision in Minn.Stat. § 260.194, subd. 1 which allows for the placement of a runaway or truant in a secure facility. While we recognize that difficulties are often encountered in attempting to place a youngster temporarily while awaiting transfer to an appropriate program, we also recognize that there are strong public policy reasons why status offenders should not and need not be held in secure facilities. We conclude that the court had no authority to place L.J.C., even temporarily, in Arrowhead Juvenile Center. *See generally State ex rel. L.E.A.*

## II.

The trial court ordered L.J.C. placed in Chisholm House for 21 days, subject to good time.

L.J.C. acknowledges that a truant or runaway may be placed in a group foster home licensed by the Department of Corrections. The Chisholm House Work Program is so licensed by the Department of Corrections. Further, L.J.C. recognizes that the procedures set forth in Minn.Rules 2925.0100–2925.4100 (1983) are followed there. However, he argues nonetheless that status offenders should not be placed there because it is run "much like a military boot camp," and it accepts juveniles adjudicated delinquent as well as status offenders.

■ We are not insensitive to the concerns L.J.C. expresses. However, any remedy for his complaints would appear to rest with the legislature and not with this court. The legislature specifically permits truants and runaways to be placed in a group foster care facility licensed by the Department of Corrections. Minn.Stat. § 260.194, subd. 1(b). Both Section 260.194, subd. 1(b) which addresses dispositional alternatives available for truants and runaways, and Section 260.185, subd. 1 (1984), which addresses dispositional alternatives available for a delinquent child, permit placement in a group foster care facility. We are aware of no statutory requirements which mandate segregation of one group from the other. A request for such segregation or separate facilities must be made to the legislature.[1]

## III.

L.J.C. contends that the court's written findings are inadequate in several respects.

■ He first complains that some of the information in the court's order is inaccurate. We have reviewed the record and find that any inaccuracies are not significant. For example, the court found that the social worker observed L.J.C. truant the day prior to a previous court appearance. L.J.C. says that the social worker did not say that he was truant the day before court. The social worker said "Right after court last week the next day I saw [L.J.C.] back down in the mall during school time." The fact that the court found that the truancy was the day before court rather than the day after court is insignificant in this case.

■ L.J.C. also complains that the order contains information which was not placed

---

1. The Commissioner of Corrections has available several administrative remedies to assure that group foster homes conform to minimum standards regarding the health, welfare and safety of residents. Minn.Rules 2925.1300, 2925.1400 (1984); Minn.Stat. § 241.021 (1984).

in the record at the time of the disposition hearing. The order does contain such additional information. During the hearing, the court went off the record and talked to a staff person from a program which L.J.C. had previously attended. The court summarized the conversation on the record. In its order, the trial court stated that the staff person recommended a "stiff consequence" and that the Chisholm House Work Program would be an appropriate placement. These statements were not made part of the summary of the conversation that the trial court put on the record. However, L.J.C.'s counsel made no objection to the trial court's talking to the staff person off the record or to putting a summary of the conversation on the record. Counsel did not ask for a continuance so the staff person could appear. We find no error.

■ L.J.C. also complains that the court's written order contains findings which were not placed on the record at the time of the hearing. Minn.Stat. § 260.194, subd. 1 provides:

* * * Any order for a disposition authorized by this section shall contain written findings of fact to support the disposition ordered, and shall also set forth in writing the following information:

(a) Why the best interests of the child are served by the disposition ordered, and

(b) What alternative dispositions were considered by the court and why they were not appropriate in the instant case.

■ While we do not diminish the value of complete findings on the record and in an order to a reviewing court, neither Section 260.194, subd. 1, nor its counterpart, Minn.R.Juv.Cts. 30.05 (1984), require that the court make all of its findings on the record before the disposition is ordered. Rather, it requires the written findings to "support" the disposition order.

■ Finally, L.J.C. argues that the court did not consider the best interests of the child and why alternative dispositions were not appropriate. The order lists the vari-

ous recommendations considered. It states that placement at Chisholm House Work Program is the least restrictive option that would have any impact on L.J.C.'s truancy and manipulative behavior, and that an impact is necessary to keep him in school. The court then listed a number of reasons why Chisholm House Work Program would be a good placement. We find that the court's order meets the requirements of Minn.Stat. § 260.194, subd. 1 and Minn.R. Juv.Cts. 30.05.

### DECISION

A status offender may not be held in a secure facility while awaiting post-adjudication placement. A status offender may be placed in group foster homes. The findings of the trial court are adequate.

Affirmed in part and reversed in part.